UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO.   H-4:17-cr-00651-8 |
| | § | |
| ERIK IVAN ALVAREZ-CHAVEZ, | § | |
| | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, Acting United States Attorney for the Southern District of Texas, and Adam Laurence Goldman, Assistant United States Attorney, and the defendant, Erik Ivan Alvarez-Chavez ("Defendant" or "Ivan"), and Defendant's counsel, pursuant to Rule **11(c)(1)(A) and 11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.   Defendant agrees to plead guilty to Counts **12, 13, 18, 19, 20, 21, and 35** of the Indictment.   Count 12 charges Defendant with Aiding and Abetting Transportation to Engage in Prostitution, in violation of Title 18, United States Code, Sections 2421(a) and 2.   Count 13 charges Defendant with Conspiracy to Entice and Coerce Another to Travel in Interstate or Foreign Commerce for Prostitution, in violation of Title 18, United States Code, Sections 371 and 2422(a). Count 18 charges Defendant with Conspiracy to Bring In, Transport, Move, Conceal, Harbor, and Shield From Detection Illegal Aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), (A)(iii), (A)(v)(I), (B)(i), and (B)(iii).   Counts 19 through 21 charge Defendant with Transporting, Moving, Concealing, Harboring, Shielding From Detection, and Conspiring to Transport, Move, Conceal, Harbor and Shield From Detection Aliens, in violation of Title 8,

United States Code, Section 1324(a)(1)(A)(ii), (A)(iii), (A)(v), (B)(i), and (B)(iii).   Count 35 charges Defendant with False Statement in an Immigration Document, in violation of Title 18, United States Code, Section 1546(a).   Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.   The **statutory** maximum penalty for each violation of Title 18, United States Code, Sections 2421(a) and 2, is imprisonment of not more than 10 years and a fine of not more than $250,000.   Additionally, Defendant may receive a terms of supervised release after imprisonment of up to 3 years.   *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2).   The **statutory** maximum penalty for each violation of Title 18, United States Code, Sections 371 and 2422(a), is imprisonment of not more than 5 years and a fine of not more than $250,000. Additionally, Defendant may receive a terms of supervised release after imprisonment of up to 3 years.   *See* Title 18, United States Code, sections 3559(a)(4) and 3583(b)(2).   The **statutory** maximum penalty for each violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), (A)(iii), (A)(v)(I), (B)(i), and (B)(iii), is imprisonment of not more than 20 years and a fine of not more than $250,000.   Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years.   *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2).   The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1546(a), is imprisonment of not more than 10 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years.   *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2).   Defendant

2

acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisonment for up to 2 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3)-(4), and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance. In addition, pursuant to Title 18, United States Code Section 3014, should the Court determine that Defendant is not indigent, Defendant would also have to pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5,000.00) per count of conviction under 8 U.S.C. §§ 2421(a) and 2, 371 and 2422(a), and 1324(a). The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77201, Attn: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied

3

admission to the United States in the future.  Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States.  Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Cooperation**

5.  The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines.  Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas.  Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines.  Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture of assets contemplated in paragraphs 17-27 of this agreement.  Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.  Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to sex trafficking, alien smuggling, immigration offenses, firearms, and drugs. Defendant understands that such information includes both state and federal offenses arising therefrom.  In that regard:

4

(a)     Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States.  Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal and Collateral Review

7.   Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.  Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally

attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10. The United States agrees to each of the following:

(a)     If Defendant pleads guilty to Counts **12, 13, 18, 19, 20, 21, and 35** of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b)     If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the

6

United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

11.   The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment.   This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney's Office.   The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

12.   The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

(a)      to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)      to set forth or dispute sentencing factors or facts material to sentencing;

(c)      to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)      to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)      to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

13.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a).   Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

14.     Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)      If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)      At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear

8

voluntarily, he could require their attendance through the subpoena power of the court; and

(c)      At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

15.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts **12, 13, 18, 19, 20, 21, and 35** of the indictment.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.   The following facts, among others would be offered to establish Defendant's guilt:

### I.    Overview

The Southwest Cholos and its associates (hereinafter referred to as "SWC") are a criminal organization based on Southwest Houston, which is within the Southern District of Texas.   In addition to its members, SWC also has associates operating throughout Texas, Mexico, and Central America who act in furtherance of the criminal scheme described herein.   SWC members and associates are engaged in a variety of criminal conduct, including, but not limited to, sex trafficking, drug trafficking, alien smuggling, firearms trafficking, and the smuggling of illegal aliens into and within the United States in order for the illegal aliens to engage in prostitution. This includes SWC members and associates operating brothels in Houston, Texas (which is within the Southern District of Texas), and Mexico.   Among the brothels operated by SWC in the Southern District of Texas were those at:

- The Carriage Way Apartments, 6021-23 Dashwood, Houston, Texas 77081 (which was operated by **Maria Angelica Moreno-Reyna** ("**Patty**"); managed by **Gabriela Gonzalez-Flores** ("**Gabby**"); had security provided by, amongst others, **Eddie Alejandro Torres**

9

("**Eddie**") (who specifically provided security in a truck with red security strobe lights), **Raul Moreno** ("**Coney**"), and **Erik Ivan Alvarez-Chavez** ("**Ivan**"); and had furniture and drinks provided by **Ivan**)).

- The Englewood Village Apartment, 6363 Skyline Drive, Unit 57 Houston, Texas 77057 (which was operated by **Patty** and **Eddie**; and managed by **Gabby**); and

- The Las Velas Apartments, 7111 Hillcroft, Houston, Texas 77081; The Bella Luna Apartment, 5261 Westward Street, First Floor, Houston, Texas, 77081; the Windswept Gardens, 6320 Windswept Road, Building 5559 Houston, Texas, 77057; and the Coral Heights Apartment, 6363 Beverly Hills Street, Second Floor of Building 69-76, Houston Texas   77057 (which were operated by **Walter Lopez** ("**Walter**"); managed by **Gabby, Claudia Soriano-Hernandez** ("**Claudia**"), **Anadalit Duarte** ("**Anadalit**"); provided with prostitutes (including juveniles) by **Hector Reyna** ("**Hector**") that he recruited through sex trafficking; and provided controlled substances for the prostitutes (some of whom were sex trafficking victims and some of who were juveniles) to calm them down so that SWC members and associates could control them by **Bianca Reyna** ("**Bianca**")).

The SWC and its associates also had a brothel in Cancun, Mexico, which was operated by **William Lopez** ("**William**").  SWC members and associates also used stash houses, including those operated by **Melisa Dominguez** ("**Melisa**"), in the Southern District of Texas portion of the Rio Grande Valley to house the smuggled illegal aliens, including sex trafficking victims, as they travelled from outside of the United States to the Houston, Texas vicinity.

**II.     BAS**

On April 12, 2017, **Patty** discussed over a court-authorized wire intercept having BAS, a

10

non-citizen and relative of **Ivan**, smuggled into the United States so that BAS could work in a brothel operated by **Patty** and managed on a day-to-day basis by Gabby at 6021-23 Dashwood, Houston, Texas 77081. **Patty** then discussed the matter telephonically with **William**, who was residing in Mexico at the time, and, at that time, had BAS staying with him in preparation for her to illegally enter the United States where she would work as a prostitute at the abovementioned brothel. **Patty** stated that she would send $2,500 to **William** to help facilitate BAS's illegal entry into the United States. **Patty** then called **Cerillo** and provided **Cerillo** with the details of BAS's trip so that **Cerillo** could pick BAS up in furtherance of BAS being smuggled into the United States to work as a prostitute. **Cerillo** also gave **Patty** instructions for how to pay him for the transportation of BAS into the United States. **Patty** then spoke to **William** and informed **William** that she (**Patty**) spoke to **Cerillo** so that **Cerillo** could transport BAS. **Patty** and **William** also discussed how they would pay **Cerillo**.

On April 12, 2017, **Cerillo** told **Patty** that BAS was arriving 15 minutes late in Miguel Aleman, which is a Mexican city on the border with the United States. **Patty** indicated that she (**Patty**) would be providing **Cerillo** with the remainder of the smuggling fee.

On April 14, 2017, **Cerillo** requested the remainder of the smuggling fee for BAS. Then, **Patty** spoke to **Melisa**, who ran the organization's stash houses in the Rio Grande Valley in that at least two other women who worked at **Patty's** brothels (**Anadalit** and AOP) had stayed there previously after having illegally crossed the United States-Mexico border on their way to working at the brothel in Houston located at 6021-23 Dashwood, Houston, Texas 77081. In that conversation, **Melisa** told **Patty** that she (Melisa) would pay **Cerillo** the remainder of the fee for BAS. **Patty** responded by telling **Melisa** that **Patty** would let **Melisa** know when and where to

11

pick up BAS after BAS crossed the United States-Mexico border.   Later, **Melisa** told **Patty** that she was informed that BAS had just entered the United States with **Cerillo's** assistance.   **Melisa** further stated that BAS was at a ranch and was to be transported to **Melisa's** stash house.   **Melisa** then explained that she would arrange for BAS to be transported to San Antonio where **Patty or Ivan** could pick up BAS to bring her to Houston.   However, later that day, **Melisa** called **Patty** again to inform her that there was difficulty having BAS cross the United States-Mexico border, so a crossing would have to be tried later.

On April 19, 2017, **Melisa** informed **Patty** that BAS successfully crossed the United States-Mexico border and was being taken to San Antonio where **Patty** and **Ivan** could pick her (BAS) up.

On or about May 1, 2017, **Patty** stated in a recorded phone call that **Ivan** picked up BAS in San Antonio and brought her to Houston, where she would work as a prostitute at 6021-23 Dashwood, Houston, Texas 77081.   Afterwards, **Melisa** called **Patty** and inquired as to whether BAS was still working for **Patty** as a prostitute.   Physical surveillance established that, after this date, BAS was, in fact, working as a prostitute at the brothel controlled by **Patty** located at 6021-23 Dashwood, Houston, Texas.

### III.     The July 17, 2017 Smuggling

On July 17, 2017, **Melisa** and **Ivan** discussed over a court-authorized wire intercept the transportation of aliens from **Melisa's** stash house in the Rio Grande Valley to **Ivan's** place of operation in Houston for smuggled aliens, which was located in the vicinity of 6021-23 Dashwood, Houston, Texas 77081.   **Ivan** and **Melisa** then discussed the route they would take to pick up the smuggled aliens.   **Ivan** then spoke with co-defendant **Jose Ruben Palomo-Martinez ("Palomo")**

12

about this transportation from **Palomo's** truck to **Ivan's** vehicle as well as future alien smuggling jobs.   Later that evening, **Melisa** asked **Ivan** if **Palomo** were coming.   **Ivan** indicated he was and he told **Palomo** to meet **Melisa** at the Walmart.   **Ivan** then told **Melisa** to meet **Palomo** at the Walmart.   **Ivan** later called co-defendant **Grisel Salas ("Salas")**, who worked with **Melisa** and who was harboring the aliens in her (**Salas**) stash house along with separately indicted defendant **Luis Veras-Figueroa ("Veras-Figueroa")**, who himself had also been smuggled into the United States by this organization.   The illegal aliens being transported at this time were Chuanping Chen and Aihui Lin, who are natives and citizens of the People's Republic of China, and Wilvin Francisco, who is a native and citizen of the Dominican Republic.   **Salas** indicated that the woman, Aihui Lin, was acting out.   **Melisa** responded by instructing **Salas** to calm Aihui Lin with pills.   **Salas** stated that she did so.   **Ivan** then spoke with an individual identified as Yang Xiuping and updated him about the transportation of the Chinese individuals (Chuanping Chen and Aihui Lin).   **Ivan** later called **Salas** and told her to look for the Gray Dodge Charger.   **Salas** then transported the smuggled aliens to **Melisa**.   Then, **Melisa** called **Ivan** to let him know that the aliens were picked up.   Both **Melisa** and **Salas** told **Ivan** in phone calls that there were "problems" with the Chinese.

On the morning of August 17, 2017, **Palomo's** tractor-trailer, which he operated and owned with his wife, was fully loaded with watermelons at the Food Bank Rio Grande Valley.   The watermelons were destined for Tulsa, Oklahoma.   Witnesses at the food bank indicated that **Palomo** witnessed the entire loading of the tractor trailer and closed the door himself.   It could not have been closed from the inside.   **Palomo** then drove approximately 15 minutes to a parking lot near Edinburg, Texas, where Chuanping Chen, Aihui Lin, and Wilvin Francisco got into his

trailer.  The aliens could not have closed the door from the inside.   There were also no markings on the truck as to where it was headed.   Court-authorized wire intercepts also indicated that fake identification documents were waiting for the two Chinese individuals at **Ivan's** stash house in Houston.  **Palomo** then approached the Falfurrias checkpoint, at which point "Kaylie," a canine, alerted to the presence of humans in the tractor trailer.   An x-ray scan was then conducted and the three aliens were discovered in the back of the trailer right next to the door (they could not have been anywhere else in the trailer as it was full of watermelons).   They were not seatbelted and there was a substantial likelihood they could have been crushed by the watermelons.

The three aliens admitted to being in the United States illegally, to recently entering the United States illegally, and to paying between $14,000 and $40,000 to be smuggled into the United States and transported to their final destination in the northeastern portion of the United States.

## IV.    The July 24, 2017 Smuggling

On the evening of July 23, 2017, Edgar Ernesto Martinez-Hercules, Elbin Jonathan Bonilla-Fajardo, Angel Balmore Quijada-Flores, Vilma Aracely Rivera-Guevara, Jose Vidal Zelaya-Mejia, and Heladio Santiago-Bautista (one of whom was a minor) were picked up in a tractor-trailer from a mobile home near McAllen, Texas operated by **Melisa**, after having recently entered the United States illegally.   They were taken through the Falfurrias checkpoint and to a gas station near San Antonio where co-defendant **Denis Amaya-Caballero** ("**Denis**") and **Ivan** were waiting in two separate cars.  **Ivan** was driving a grey Dodge Ram pickup and **Denis** was driving a black Chevrolet Trailblazer.  **Denis** and **Ivan** each transported three aliens.   When they reached Harris County, Harris County Sheriff Deputies pulled over **Denis** for having a passenger not wearing a seatbelt.   All three aliens in his vehicle admitted to being in the country illegally

14

and having paid approximately $7,000 to $10,000 each to be transported to Houston.   Then, after

being read his *Miranda* rights, **Denis** admitted that he was transporting the aliens for profit.   He

also admitted to acting in concert with **Ivan** and the driver of the tractor trailer.   Specifically,

**Denis** stated that **Ivan** offered to pay him $200 per person to transport the aliens.

Afterwards, **Ivan** was pulled over for an unsafe lane change and all of the aliens he was

transporting admitted to being transported as illegal aliens to Houston and to paying between

$7,000 and $10,000 to be smuggled to Houston.   Three of the aliens were individuals who had

been previously deported and one was an unaccompanied juvenile.   Two of the aliens stated that

they would not be allowed to leave the stash house they were supposed to go to in Houston until a

further sum was paid.

Prior to the arrest, **Patty** discussed the matter with **Ivan** over a court-authorized wire

intercept and specifically discussed harboring the aliens once they arrived in Houston at the 6021-

23 Dashwood, Houston 77081, which included ordering food on their behalf.

## V.     Ivan's Immigration Document Fraud and Identity Theft

On or about July 19, 2013, and again on March 3, 2015, in the Southern District of Texas,

**Ivan** signed, executed and filed a Form I-821 Application for Temporary Protected Status ("I-

821"), which is a document prescribed under the immigration laws and regulations of the United

States, under oath and penalty of perjury, in which he knowingly falsely claimed that:   (1) his

name is JOH; (2) the only other name he has ever used is JOH-Rosales or J Ovidio H-Rosales; (3)

he is a native, citizen and national of El Salvador; (4) he was born on XX/XX/XXXX in Santa

Isabel, El Salvador; (5) he has never been convicted of or has ever committed acts which constitute

the essential elements of a crime (other than a purely political offense); (6) he has never engaged

in any other unlawful activity in the United States; and (7) he has never, by fraud of willfully

misrepresenting a material fact, sought to obtain a visa or other documentation, admission to the United States, or any other immigration benefit.   In support of claims (1) through (4), **Ivan** submitted JOH's El Salvadoran birth certificate with his I-821s.

JOH is, in fact, an actual native, citizen and national residing in El Salvador with the abovementioned date of birth and place of birth.   JOH is not **Ivan** and JOH never gave **Ivan** permission or lawful authority to use his name, identification, date of birth, place of birth, and birth certificate.

**Ivan** used JOH's identity to obtain Temporary Protected Status and employment authorization as a citizen of El Salvador, despite the fact that he is a native, citizen, and national of Honduras who, aside from the illegal use of JOH's identity, has no legal status in the United States.

**Breach of Plea Agreement**

16.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand.   If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

**Restitution, Forfeiture, and Fines – Generally**

17.    This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18.    Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information.   Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19.    Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20.    Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

17

### Restitution

21.   Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction.   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s).   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture

22.   Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.   In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:   One (1) 2007 black Chevrolet Trailblazer; One (1) 2013 grey Dodge Ram pickup; One (1) 2006 white trailer with VIN 1GRAA06216W705993; and One (1) 2006 blue Peterbilt Motors Co. tractor with VIN 1XPFDB9X26N642109.

23.   Defendant stipulates and agrees that Defendant obtained proceeds from the criminal offenses and that the factual basis for his guilty plea supports the forfeiture of that same amount. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists.   Defendant agrees to forfeit any of Defendant's property in substitution, up to a total forfeiture of the amount of proceeds he obtained.   Defendant agrees to the imposition of a personal money judgment in that amount.

18

24.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

25.   Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

26.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

27.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any.   Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

28.   This written plea agreement, consisting of 22 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

19

29.   Any modification of this plea agreement must be in writing and signed by all parties.


Filed at ___Houston_____, Texas, on ___May 26_____, 20 22


X Erik I Alvarez

Erik Ivan Alvarez-Chavez
Defendant


Subscribed and sworn to before me on ___May 26_____, 20__.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By:   ___Melissa Morgan_____

Deputy United States District Clerk


APPROVED:

Jennifer B. Lowery
Acting United States Attorney

By:   ___Adam L. Goldman_____

Adam Laurence Goldman
Assistant United States Attorney
Southern District of Texas
Telephone: 713-567-9534
Facsimile:  713-718-3303


Adrian Almaguer
Attorney for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO.   H-4:17-cr-00651-8 |
| | § | |
| ERIK IVAN ALVAREZ-CHAVEZ, | § | |
| | § | |
| Defendant. | § | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I

have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual

and Policy Statements and I have fully and carefully explained to Defendant the provisions of

those Guidelines which may apply in this case.   I have also explained to Defendant that the

Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum

allowed by statute per count of conviction.   Further, I have carefully reviewed every part of this

plea agreement with Defendant.   To my knowledge, Defendant's decision to enter into this

agreement is an informed and voluntary one.

_____          May 20, 2022
Adrian Alamguer                                          Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the

indictment pending against me.   My attorney has fully explained, and I understand, all my rights

with respect to the provisions of the United States Sentencing Commission's Guidelines Manual

which may apply in my case.   I have read and carefully reviewed every part of this plea agreement

21

with my attorney.   I understand this agreement and I voluntarily agree to its terms.

x~~Erik I Aluarez~~

Erik Ivan Alvarez-Chavez
Defendant

~~May 20, 2022~~

Date

22